### J. I. CULBERSON, TREASURER, v. THE GILMER BANK.

Decided February 18, 1899.

**Public School Fund—Payment of Teachers.**

A school voucher regularly and legally issued and approved for the services of a teacher may, under the Constitution and statutes, be paid out of a fund apportioned to the school district for the year subsequent to that during which the services were rendered, the amount apportioned to the district for that year having fallen short.

ERROR from Upshur. Tried below before Hon. J. G. RUSSELL.

*F. J. McCord,* for appellant.

*J. S. Barnwell* and *F. S. Eberhart,* for appellee.

FINLEY, ASSOCIATE JUSTICE.—Appellee instituted this suit in the District Court of Upshur County, Texas, praying for a writ of mandamus to compel the appellant, as county treasurer of Upshur County, to pay to appellee a certain voucher duly and legally issued to May D. Hardy on January 17, 1896, by the trustees of school district No. 6 of Upshur County, for services as teacher in public free school No. 2 in said district, alleging: That during the scholastic year beginning September 1, 1895, and ending August 31, 1896, May D. Hardy was a qualified teacher in Upshur County, holding a valid certificate duly and legally issued to her. That she contracted with the trustees to teach Cox's school No. 2, in district No. 6, Upshur County, during December, 1895, and January, 1896, and that her contract was properly approved. That she taught in said public free school during said months, and for the month ending January 17, 1896, received the voucher here sued on. That said voucher was properly approved on the 12th day of February, 1896, and was directed to the treasurer of Upshur County, directing him to pay to her the sum of $6.25 out of the public school fund apportioned to said district. That

said voucher was assigned and transferred to appellee for value on May 21, 1896. That the appellant, as county treasurer, had in his hands available school funds belonging to said school and district sufficient to pay said voucher. That appellee had demanded of appellant payment of said voucher and that he had refused same. That Upshur County was under the "district system" as provided by Article 3938, Revised Statutes.

Appellant answered by general demurrer, general denial, and specially: That the scholastic year began September 1st of each year and ran until September 1st of the following year. That he had no funds in his hands for the scholastic year 1895-6, nor for the year 1896-7. That the only funds in his hands were apportioned for the year 1897-8. That on August 1, 1897, the board of education apportioned to Upshur County the sum of $16,000 for the year 1897-8, which amounted to $4 to each child in said county. That the Hon. T. H. Briggs, county judge and ex officio superintendent of public schools for said county, refused to apportion all of said fund, and withheld from apportionment the sum of 40 cents for each child, although on appeal to the board of education he had been ordered so to do, and he prayed that said Briggs be made a party to this suit, and that mandamus issue to compel him so to do.

Briggs was not made a party to the suit.

Trial by the court June 25, 1898, and mandamus awarded as prayed for.

The case was tried on an agreed statement of facts, the substance of which is as follows:

That the voucher sued on was issued to May D. Hardy on January 17, 1896, by the trustees of Cox's school No. 2, district No. 6, Upshur County, for $6.25, to be paid out of the public school fund apportioned to said district.

That said voucher was issued to her for her services as a teacher of said school for the month ending January 17, 1896, and was duly approved February 12, 1896.

That J. I. Culberson is now and has been treasurer of said county since November, 1896.

That the Gilmer Bank is the owner of said voucher for value paid therefor in the due course of trade.

That demand for payment has been made and refused.

That the defendant did not have in his hands any part of the available school fund for the school year 1895-6, and never did have.

That the defendant, Culberson, had in his hands funds of the available school fund to the credit of said district No. 6 sufficient to pay said voucher, but the same came into his hands as follows:

The sum of $48 was left to the credit of said district at the close of the scholastic year ending August 31, 1897, which was a part of the fund apportioned for the school year 1896-7, and was brought forward to the credit of said district for the school year 1897-8.

That the balance of the available school fund on hand was for the school year 1897-8.

That the voucher sued on has never been paid.

That Upshur County has been divided into school districts as provided by article 3938, Revised Statutes of Texas, and the schools in the county have been run under the district system since the year 1894.

That the Hon. T. H. Briggs, county judge and ex officio superintendent of public schools of Upshur County, acting under the instructions of Hon. J. M. Carlisle, Superintendent of Public Education of the State of Texas, had apportioned to the several school districts of said county the amounts coming to them out of the amount apportioned to Upshur County by the board of education at Austin on the 1st day of August, 1897, but has charged the voucher here sued on against the said apportionment to the credit of said district No. 6, and has refused to approve any contract or voucher against that part of said apportionment set aside by him for the payment of said voucher. ·

*Opinion.*—The only issue in the case is one of law, the facts being wholly undisputed. The question is, can the school voucher regularly and legally issued and approved for the services of Miss Hardy as teacher during the month ending January 17, 1896, be paid out of any fund other than that which was apportioned to the particular school district in which the services were rendered for the years beginning September 1, 1895, and ending August 31, 1896? The treasurer of the county has funds in his hands apportioned to this particular district and to the particular school to which the service was rendered. Forty-eight dollars of this amount on hand was left over from the apportionment for the scholastic year 1896-1897, and the balance is the apportionment for the year 1897-1898. The amount of this voucher is charged against this fund in the treasurer's hands by the county judge, under directions from the Superintendent of Public Instruction, and he has allowed the trustees of this particular school to contract for the services of a teacher for the year 1897-1898 only to the extent of this fund, less the amount of this voucher charged against it.

From some cause unexplained by the record the amount apportioned to this school for the year 1895-1896 fell short, and the services of Miss Hardy as teacher for a month of that year were not paid out of that apportionment, or in any other way. Must her services for this reason go unremunerated, or shall the provision made by the school authorities be upheld? It is contended by appellant that sections 3 and 5 of article 7 of the Constitution compel the answer that the failure to pay out of the apportionment of 1895-1896 leaves no source from which payment may lawfully be made. Section 3 provides for supplementing the available school fund, arising from all other sources, by directing that one-fourth of the revenue derived from occupation taxes and a poll tax of $1 shall be set apart annually for the benefit of the public free schools, and requiring the levy of an annual ad valorem State tax of such an amount, not to exceed 20 cents on the $100, as will secure the operation of the schools for at least six months in the year. It also provides for the crea-

tion of school districts, which may also supplement the school fund by the levy of a tax. While this provision of our organic law contemplates the annual raising of revenue by the methods pointed out for the purpose of meeting the current expense of conducting public free schools, we fail to discover in expression or spirit any inhibition against the use of such funds raised one year in payment of liabilities created during a previous year. The section referred to was manifestly not designed to provide the details of operation, but merely to furnish the source from which necessary revenue could be derived. It might very properly be regarded as suggestive to the legislative mind of a plan to be formulated into legislative enactment, whereby the revenue derived from the specified sources each year should be applied exclusively to the expenses incurred that year in maintaining the schools. But there is no such language used in that section of the Constitution as would indicate a mandatory requirement to the effect that the available fund arising each scholastic year should only be applied to expenses incurred during such year.

Section 5 does not affect the question in hand. It provides what shall be the permanent school fund and what the available fund; prohibits the appropriation of the former, and directs the apportionment of the latter among the several counties, and requires that it shall be "applied in such manner as may be provided by law." It is not suggested that any other provision of the Constitution stands in the way of the payment of appellee's claim out of the funds in the treasurer's hands. We should next look to our statutes in the determination of the question presented.

Upshur County operates its public free schools under the district plan provided for by chapter 10, Revised Statutes, beginning with article 3938. The statutes provide for the division of counties into districts, the election of a board of trustees for each district, and this board of trustees is made a corporate body, capable of contracting and being contracted with, suing and being sued. This board of trustees is given power to contract with teachers, but the agreement as to the salary to be paid, and the time the school is to be taught for the money, is subject to the approval of the county superintendent, who in this instance was the county judge. The statutes provide for the apportionment annually of the available school fund among the several counties and cities having independent control, according to scholastic population (Article 3923), and its payment to such counties and cities by the State Treasurer upon the warrant of the Comptroller. Arts. 3926, 3926a, 3926b. The office of county superintendent is created and he may be elected when the commissioners court shall deem it advisable. Art. 3929. In counties where no superintendent is elected, the county judge is made ex officio superintendent. Art. 3929a. It is made his duty to examine and approve the contracts of trustees with teachers, approve all vouchers legally drawn upon the school fund of his county, and he is given immediate supervision of all matters pertaining to public education in his county, under the direction of the State superintendent. He is charged with the duty of apportioning the fund among the several districts of his county. Art. 3934. The county treas-

urer is made the treasurer of the school fund, and he is required to observe the apportionment made by the county superintendent, keep a separate account with each district, etc.    Arts. 3935a, b, c, d.    Provision is made for carrying over unexpended amounts to the next year.    The statutes contemplate that he shall pay out these funds upon teachers' vouchers signed by the trustees and approved by the county superintendent.    We find no statute prohibiting him from paying a liability created in a previous year.    The county superintendent, acting under the direction of the State superintendent, is invested with large discretion in the management and control of the public free schools of the county.    The county treasurer, on the other hand, is without discretion.    His duties toward the school fund are purely ministerial.    There is no statute which prohibits the payment of a teacher's salary contracted and earned during a past scholastic year out of the funds apportioned a subsequent year.    Such matters seem to be left largely within the discretion of the school authorities.    It is evidently contemplated that the school trustees shall contract with reference to the amount of money apportioned to their districts, and that the county superintendent will approve their contracts subject to the limits to such apportionment.    But all the money is not on hand, usually, when such apportionment is made, and it may fall short, as it often has done.    The apportionment among the several counties by the State board is made about the 1st of August of each year, and the apportionment among the county districts is made by the county superintendents after official notification of the action of the State board. The scholastic year begins September 1st.    At this time the year's revenue usually has not all been collected, and the full amount apportioned may not always be realized.    If in such event the teachers can not be paid out of future revenue, then they must lose pay for their services.    It would be far more in keeping with the dignity and honor of the State to trust the discretion of its officers in such matters than to inflict so serious an injustice upon the teachers of public free schools.    Indeed, the mere reading of the laws of this State in regard to public free schools makes it at once manifest that there is no real *uniform system* of public free schools in the State.    The State is munificent in furnishing revenue for the education of the children, but largely trusts its application to county and city authorities.    It may seem strange that the State would provide for the annual expenditure of large sums of money in public free education, and yet fail to provide a perfect and uniform system for the application of the money and the conduct of the schools; but such is the real condition.    The local authorities are invested with the great measure of responsibility, and uniform results may not reasonably be expected while this condition exists.    The creation of a uniform system throughout the State, in the judgment of the writer, would be a great and lasting benefaction to the present and future generations of Texas.

We find no reasonable basis in our Constitution or statutes which would prevent the payment of appellee's voucher out of the funds in appellant's hands.    The local trustees invested with authority, under the approval

of the county judge, contracted for the services; the county judge, as superintendent has approved the voucher for the service, and it was the duty of the treasurer to pay it out of the funds apportioned to that school.

The judgment is affirmed.

*Affirmed.*